## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

**BRYAN TYLER BOERSTE**                                              **Plaintiff**

**v.**                                              **No. 3:17-cv-298-BJB-CHL**

**ELLIS, LLC, ET AL.,**                                              **Defendants**

* * * * *

### Memorandum Opinion and Order

Brian Boerste suffered severe injuries after falling off his car while it was being towed.  Seeking to recover for those injuries, Boerste sued several defendants on several theories of liability.  He and many of the defendants disclosed expert witnesses in support of their claims and defenses, and eventually filed dueling motions to exclude some of the proposed testimony.  *See* DNs 178, 179, 180, 181, 182, 183, 184.  The Court referred these motions to Magistrate Judge Lindsay for a report and recommendation under Federal Rule of Civil Procedure 72(b).  DN 195.  His report recommended granting some of the motions and denying others.  Report and Recommendation (DN 246).

Boerste objected to Judge Lindsay's recommendations that the Court: (1) partially exclude Charles Drago's testimony regarding police standards on relevance and reliability grounds, despite the defendants moving for his disqualification on different grounds; (2) exclude Dr. William Smock's testimony on the appropriateness of defendants' conduct; and (3) deny Boerste's motion to exclude Dr. Thomas Ireland's rebuttal testimony on economic losses.  DN 248.  After reviewing the recommendations, Boerste's objections, and the parties' arguments raised during a hearing on the objections, the Court agrees with Judge Lindsay's recommendations and adopts them in full.

### BACKGROUND

Because Judge Lindsay ably described the relevant facts, the Court will recount only the information important to the objected-to rulings.  Reviewing the numerous motions to exclude that the Court referred, Judge Lindsay recommended that:

(1) The Motion to Exclude Testimony of Charles W. Drago (DN 178) be granted in part and denied in part by excluding Drago's testimony about private security practices and defendant Baker and excluding Drago's

1

testimony about general police practices and their application but permitting Drago to testify regarding Cotton's alleged non-compliance with the Springfield Police Department Policies specified in his opinion;

(2) The Motions to Exclude Testimony of Joseph Stidham (DN 179, 183) be denied;

(4) The Motion to Exclude Testimony of Dr. William Smock (DN 180) be granted and Dr. Smock's opinions regarding the appropriateness of Cotton and Bewley's conduct be excluded from trial;

(5) Boerste's Motion for Leave to File a Surreply (DN 229) be granted and that the Clerk be directed to detach and separately file Boerste's proposed surreply (DN 229-1);

(6) The Motion to Exclude Testimony of David Gibson (DN 181) be denied;

(7) Defendants' Motion for Leave to file a response out of time (DN 231) be granted and that the Clerk be directed to detach and separately file Defendants' proposed response (DN 231-1);

(8) Boerste's Motion to Exclude Testimony of Dr. Thomas Ireland (DN 182) be denied; and

(9) Boerste's Motion to Exclude Certain Opinions of Dr. Sullivan (DN 184) be denied.

*See* R&R (DN 246) at 44.

Boerste timely objected to three of Judge Lindsay's recommendations:

(1) The Magistrate Judge's sua sponte exclusion of parts of Charles Drago's testimony based on relevance and reliability concerns (DN 248 at 1–18);

(2) The Magistrate Judge's exclusion of Dr. William Smock's testimony, *id.* at 18–20;

(3) The Magistrate Judge's denial of Boerste's motion to exclude the testimony of Dr. Thomas Ireland, *id.* at 20–22.

## DISCUSSION

The Court reviews de novo the portions of the recommendation that Boerste objected to. *See* Fed. R. Civ. P. 72(b)(3). And because Boerste waives objections not raised, the Court's review is limited to those specific objections. *See Carter v. Mitchell*, 829 F.3d 455, 472 (6th Cir. 2016) ("the failure to file specific objections to a

magistrate's report constitutes a waiver of those objections") (quoting *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004)).

Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the testimony satisfies four requirements:

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Sixth Circuit has interpreted the *Daubert* line of cases and Rule 702 as establishing a three-part requirement: (1) the witness must be qualified by knowledge, skill, experience, training, or education; (2) the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) the testimony must be reliable, or based on sufficient facts and reliable methods. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008) (internal quotation marks and citations omitted).

An expert can be qualified based on "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Experts who rely primarily on their experience must "explain how that experience leads to the conclusion reached … and how that experience is reliably applied to the facts." *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) (quoting Fed. R. Evid. 702 advisory committee's note).

Expert testimony is relevant under Rule 702 if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529 (quoting Rule 702). "Helpful opinions do not 'merely tell the jury what result to reach' … [or] 'addres[s] matters that [are] equally within the competence of the jurors to understand and decide.'" *Youngberg v. McKeough*, 534 F. App'x 471, 479 (6th Cir. 2013) (quoting *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1272 (6th Cir.1988)).

In assessing reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that [experts] generate." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 595 (1993). The Supreme Court identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a

3

proposed expert's opinion: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." *Id.* at 592–94.

Applying these standards, the Court agrees with Judge Lindsay's recommendations.

## I. Charles Drago

Charles Drago served in law enforcement at various levels for decades, investigating crimes, creating policies, and training officers. Boerste offers Drago to testify about general standards of care for police, specific policies in the Springfield Police department, and how Officer Cotton's conduct allegedly violated each. *See* DN 112-1 (Drago's Expert Report). Defendants moved to exclude Drago on the grounds that he was unqualified to testify about police standards in Kentucky. DN 178 at 2. Judge Lindsay disagreed, recommending that Drago was qualified. R&R at 11. But the report then sua sponte recommended that the Court exclude Drago's testimony regarding general police practices because it would be unhelpful to the jury, and thus irrelevant and unreliable. *Id.* According to Judge Lindsay, a lay person could assess the reasonableness of the defendants' conduct without the aid of an expert's opinion on general standards of police practice. *Id.* at 12. He recommended, however, that Drago could testify about specific Springfield Police Department Policies discussed in Drago's report and how Officer Cotton's conduct did or did not conform to them. *Id.* at 13.

Boerste objects on procedural grounds to Judge Lindsay's decision to raise these issues sua sponte, which allegedly deprived him of a chance to respond. DN 248 at 1–17. He also objects substantively to the exclusion of Drago's testimony regarding general police practices. *Id.* The Court held a hearing to address Boerste's procedural concerns and allow counsel to explain their positions. DN 249. Having heard both sides on this issue, the Court agrees with Judge Lindsay's recommendation, grants the motion to exclude Drago's testimony regarding general police standards, and denies the motion with respect to Drago's testimony about specific Springfield Police Department policies and their application to this case. *See* DN 178.[*]

---

[*] The ruling above applies to Drago's proposed testimony regarding Officer Cotton. Judge Lindsay also recommended excluding Drago's testimony about private-security standards and their application to Defendant Baker's conduct. R&R at 14–15. Boerste did not object to this recommendation and Judge Lindsay's analysis is sound. So the Court adopts the recommendation in full.

## A. Procedural concerns

The main thrust of Boerste's objection is that Judge Lindsay sua sponte raised issues with Drago's testimony, did not do this for other experts, and did not give Boerste a chance to respond during the year these *Daubert* motions were pending.

But Judge Lindsay did nothing wrong. Multiple courts of appeal have held that district courts may raise *Daubert* issues sua sponte without a hearing, so long as an adequate record supported the courts' review. "A district court's *Daubert* inquiry need not take any specific form, and its sua sponte consideration of the admissibility of expert testimony is permissible so long as the court has an adequate record on which to base its ruling." *Miller v. Baker Implement Co.*, 439 F.3d 407, 413 (8th Cir. 2006); *see also Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998). Boerste cites nothing indicating a magistrate judge could not do the same. If anything, a magistrate judge's sua sponte consideration of an admissibility concern carries more protection for the parties, who may submit written objections (as Boerste did here) and expect review and consideration by the district judge (as also happened here). Drago's report certainly gave both reviewing judges an adequate record to work with.

The caselaw Boerste cites to the contrary say only that a judge is not *required* to raise issues sua sponte—not that they are *prohibited* from doing so. *See McKnight By and Through Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1407 (8th Cir. 1994) ("To the extent that JCI is arguing that the district court was required to exercise its gatekeeping authority over expert testimony without an objection, we disagree."); *Macsenti v. Becker*, 237 F.3d 1223, 1233 (10th Cir. 2001) (*Daubert* does not "overrid[e] the general requirement of a timely objection to the evidence," such that sua sponte analysis is required). All this underscores the trial court's discretion, including the discretion to address admissibility concerns in the court's gatekeeping role at an appropriate time in a complex case. It does *not* imply a strict rule that a judge must address the same issues at the same time for all experts.

In any event, any hypothetical procedural error would be harmless. The district court undoubtedly could have sua sponte raised the same issues the Magistrate Judge did. Or the district court could afford the objecting party a full opportunity to raise any and all concerns with the procedural and substantive aspects of the Magistrate Judge's ruling, which it did.

Boerste offers no authority indicating the opportunity to object and have a hearing with de novo review would not cure his procedural concerns. DNs 248, 249. The Court referred the motions under Rule 72(b), which governs dispositive motions and requires de novo review for objections. *See* DN 195. Yet Boerste contends—against his apparent interest in overturning the recommendation—that these are non-dispositive motions that must be reviewed only for clear error under Rule 72(a). Boerste also worries, counterfactually, that he might not even be allowed to object to

an issue that was not raised before the magistrate. *See Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988) (issues not raised before the magistrate are forfeited).

But regardless of whether Rule 72(a) or (b) applies, and regardless of whether Boerste could or did object, a district court retains inherent authority to review any aspect of the magistrate judge's recommendation de novo. *See Butterworth v. Lab'y Corp. of Am. Holdings*, 2016 WL 3901379, at *1 (M.D. Fla. July 19, 2016) (reviewing a recommendation under Rule 72(a) de novo); *Stephens v. Tolbert*, 471 F.3d 1173, 1176 (11th Cir. 2006) (lack of objection does not prevent de novo review in district court's discretion). "[W]hile the [Federal Magistrates Act] does not *require* the judge to review an issue de novo if no objections are filed, it does not *preclude* further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.*" Thomas v. Arn*, 474 U.S. 140, 154 (1985) (district judge made de novo determination despite absence of objection by petitioner to magistrate judge's findings) (emphases added). Indeed, Rule 72(a) says the Court "must" set aside objected-to issues that are "clearly erroneous or … contrary to law." It doesn't say the Court *may not* otherwise reject a magistrate judge's rulings. This leaves trial judges ample discretion to review a magistrate judge's order on other bases, including de novo review of an issue not fully briefed before an R&R. *Cf. Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 F. App'x. 942, 946 (6th Cir. 2004) (District courts have inherent authority under common law (or Rule 54(b)) to "reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient," such as evidentiary rulings). Put another way, Boerste identifies no rule of law that would bar a district judge from addressing a question of admissibility that a magistrate judge has *not* first addressed. Likewise, nothing bars the Court from revisiting or raising afresh—after briefing and argument—a conclusion a magistrate judge raised sua sponte.

Since the Court asked the Magistrate Judge here to provide a report and recommendation, the Court will review it as such and address objections de novo—the more favorable standard from Boerste's perspective. Because he had a chance to object to the reasons recommended for exclusion, participated in a hearing on the issue, and received de novo review of his objections, no procedural basis exists to reject Judge Lindsay's report.

## B. Relevance and reliability

A district court exercises "broad discretion as a 'gatekeeper'" when determining whether expert testimony is helpful to the jury. *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000). Such testimony is unhelpful when the subject matter is "not beyond the ken of the average juror." *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016) (quoting *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994)). "In cases involving law-enforcement experts," the Sixth Circuit has required district courts to determine whether "'without expert testimony, the average juror is unlikely

to understand' the material about which the expert proposes to testify." *Id.* (citation omitted).

Applying this standard, Judge Lindsay recommended excluding Drago's testimony about general police standards and their application to Cotton's conduct. Regardless of Drago's general statements about his own views on proper police practices, Judge Lindsay concluded, the average lay juror "without experience in policing" could still largely "listen to the testimony from the other fact witnesses and make his or her own conclusions as to the reasonableness and appropriateness of Cotton's actions." R&R at 12. Judge Lindsay correctly observed that "Drago often fail[s] to cite … any … recognized police policies and procedures," but instead offers opinions "largely couched in terms of general statements" that rest on "little authority or specific practices." *Id.*

Among these "conclusory" statements are Drago's opinions that Cotton did not "follow accepted police practices" for "controlling the situation" and "protecting … individuals associated with the event" (DN 112-1 at 5); that he "had a duty to protect the public" (*id.* at 6); that "police training dictates" he take "some action" to protect the Plaintiff from driving Plaintiff's car (*id.*); that he had "clear responsibility to take control" over the "tow truck driver" and "towing process" (*id.* at 7); and that he had a duty to "prevent anyone from placing anyone else in harm's way" (*id.*). *See* R&R at 13 (internal quotations omitted).

Judge Lindsay was quite right that the *details* of "accepted police practices" and "police training" would help the jury—but not these conclusory opinions. *Id.* Importantly, Judge Lindsay did not recommend excluding all of Drago's testimony; he concluded that expert testimony regarding specific Springfield Police policies could help provide a baseline for lay jurors. *Id.* These aspects of Drago's disclosed opinions and testimony more directly and reliably connect relevant aspects of the Defendants' training and duties to the events at issue here. Boerste nevertheless objects that the entirety of his proposed testimony on police procedures, resting on his own ample experience, is reliable and would help the jury. DN 248 at 10–17. The limitation on Drago's testimony, therefore, hardly leaves Drago without anything to say at trial; the recommended limitations will helpfully streamline the evidence before the jury without unduly prejudicing Boerste's ability to present his proof.

Judge Lindsay correctly distinguished an expert's general experiences and more specific policies—not just as a matter of trial management and evidentiary gatekeeping, but also as matter of governing caselaw. This division is reflected in similar precedent dealing with law-enforcement experts. The Sixth Circuit, for example, has ruled that there is "no such 'field' as 'police policies and practices,'" given that the term is "so broad as to be devoid of meaning." *Berry v. City of Detroit*, 25 F.3d 1342, 1352 (6th Cir. 1994). Although that case primarily concerned the witness's qualifications, the Court also discussed the relevance and reliability of testimony regarding general police practices. It noted—in terms echoed in the decision Boerste

challenges here—that the witness's conclusory and generalized testimony could not help the jury, but would instead amount to telling the jury that witness's view on what the law was and what conclusions to reach. *Id.* at 1352–54. In contrast with such generalized knowledge and conclusions, the Sixth Circuit has—again like the R&R at issue—affirmed a district judge's decision to admit more focused testimony about a "discrete aspect of police practices, namely use of excessive force, based upon his particularized knowledge about the area." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004).

Subsequent decisions navigating this divide have agreed that "basic principles that officers learn about armed suspects" "arguably fall within the realm of common knowledge and common sense" and are therefore not helpful to the jury. *Goodwin v. Richland Cty.*, 832 F. App'x 354, 359 (6th Cir. 2020) (quoting 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.03[2][b]). The Seventh Circuit similarly has held that experts may describe specific professional standards and departures from them in a manner that sets a useful baseline for a jury charged with making a negligence determination. *See Jimenez v. City of Chicago*, 732 F.3d 710, 721–22 (7th Cir. 2013). But the same decision recognized that expert testimony regarding general standards and opinions runs the risk of bleeding into legal conclusions that the jury should not hear. *Id.*

The same logic applies to Drago's testimony. His broad statements, untethered to specific Springfield standards, raise at least two concerns. *First*, the portions of the witness's disclosed opinions pontificate on broad principles of reasonableness without grounding the standards or analysis in any sources or authority aside from his own views. Drago does this when he discusses—without citing any support—the many "duties" of officers generally and the specific alternatives Cotton could have taken. DN 112-1 at 6–7. Drago asserts that "any reasonable police officer would have recognized that Boerste was in danger when he sat on top of his vehicle while the vehicle was on a moving tow truck." *Id.* at 9. This applies no reliable method or authority, and neither judge nor jury has any way to assess the reliability of this opinion. A jury could determine for itself the alternatives that may have been reasonable, and the dangers that a reasonable person should have perceived. These conclusory statements do not rest on any expertise that could help the jurors in this case. *See Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) ("[S]uch an idea is based on common sense. This means, however, that the district court was well within bounds to conclude that expert testimony on [this subject] … was inadmissible.").

*Second*, these generalized statements come close to expressing legal opinions or answering the ultimate question of liability. *See Berry*, 25 F.3d at 1353 (general opinions that come close to legal opinions or the question of liability are impermissible); *Albert v. City of Petal*, 819 F. App'x 200, 202–03 (5th Cir. 2020) (expert witnesses should not express conclusions of law). This helps answer Boerste's question why specific policies and their potential violation comprise appropriate

expert testimony, while ultimate opinions about whether an officer's conduct was excessive or unreasonable under the Fourth Amendment is not. *See Stamps v. Town of Framingham*, 813 F.3d 27, 32 (1st Cir. 2016). Even if Drago's testimony was not disclosed in those particular terms, his opinion that Cotton had a general "duty" and probable cause to arrest Boerste certainly approaches the line. DN 112-1 at 6.

In contrast, Drago identifies specific statutes and Springfield Police policies that he applies to Cotton's conduct. DN 112-1 at 8–9. Nothing suggests a jury would be familiar with these specific policies. And their purported violation may help set a baseline of reasonable behavior that is more particularized to the incident in this case. *See Jimenez*, 732 F.3d at 721–22. In the Court's view, Judge Lindsay correctly concluded that testimony explaining and applying these specific policies would be far more helpful to the jury while avoiding the risks of conclusory opinions untethered to sources beyond Drago's own views.

## II. Dr. William Smock

Dr. Smock is a surgeon who serves as the lead physician for several police and fire departments. He has taught at a police academy and participated in internal investigations regarding excessive force. Part of Dr. Smock's proffered testimony appropriately concerned "the nature and extent of injuries suffered by Boerste." R&R at 21 (citing Defts' Reply at 7113). But part included opinions related to the appropriateness of Cotton's and Bewley's conduct. *See* DN 224 at 50–53, 59, 72. Judge Lindsay recommended excluding this testimony because Dr. Smock is not qualified to opine on appropriate police practices—only Boerste's injuries. R&R at 24. This is too narrow a view of a police surgeon's qualifications, according to Boerste, because Dr. Smock regularly works with law enforcement and surely understands it better than a lay person. DN 248 at 18–20. But Dr. Smock's expertise undoubtedly rests on his training and experience in medicine—his primary field—not on his secondary experience in law enforcement. Judge Lindsay correctly concluded that Dr. Smock is not qualified to discuss police procedures or the conduct of the defendants.

Much like Drago, Dr. Smock cannot testify about general police practices and whether and how the defendants' conduct may have conformed with such standards. At best, Dr. Smock is qualified to discuss excessive force, which appears not to be at issue in this case. Nor is there a question about how Boerste was injured that might implicate Dr. Smock's overlapping medical and police experience. The questions, rather, are distinct: the appropriateness of the defendants' conduct, on the one hand, and the extent of Boerste's injuries, on the other. Nothing indicates Dr. Smock has specific training on or experience with police practices related to incidents like this, much less the practices of tow truck drivers like Bewley. Dr. Smock even admitted that his role in this case "was to document the injuries, what happened, how they happened," not to opine on fault. DN 224 at 89:14–90:6. He may testify about Boerste's injuries, but not the conduct or fault of any actor. In line with Judge

9

Lindsay's recommendation, the Court rejects Boerste's objection and grants the motion to exclude Dr. Smock's testimony on this matter (DN 180).

## III.  Dr. Thomas Ireland

Dr. Ireland is a forensic economist proffered by the defendants to testify on Boerste's earning capacity and critique the methodology and conclusion of Boerste's expert, Gibson, on the same subject.   Boerste moved to exclude Dr. Ireland's testimony on the grounds he is not qualified in vocational rehabilitation, offers no alternative calculation of earnings loss, and admits he has no opinion on whether Boerste has a loss.  R&R at 36–37; DN 248 at 20–22.  The Court agrees with Judge Lindsay, however, that Dr. Ireland is qualified to offer an opinion on Boerste's earnings loss and a critique of Boerste's expert testimony that would likely help the jury.

Dr. Ireland is qualified as a forensic economist and can opine on how earnings change and diverge across time.  Indeed, looking at real-world earnings, Dr. Ireland concludes that "Boerste is earning far more than the average for [his] sex, age and education and far more than he was earning at the time of his injury on April 26, 2016. Thus, there is no evidence of earnings loss."  DN 134-1 at 2.  Evidence that Boerste is making more today than others similarly situated and more than at the time of his injury bears directly on Boerste's claim for lost earnings.  Dr. Ireland does not need to offer a final calculation of potential losses for this testimony to be relevant. The point is to critique and undermine Gibson's methodology and conclusions, which will help a jury evaluate lost earning capacity.

Boerste argues that even Dr. Ireland admits he cannot conclude that Boerste suffered no loss.  DN 182-2 at 91:1–22.  In context, however, Dr. Ireland is saying that from his perspective as an economist, Boerste does not appear to have suffered any particular earnings loss based on the evidence supplied to him and relied on by Gibson.  *Id*.  But this does not mean Boerste did not suffer some other type of quantifiable loss; Ireland's opinion is limited to lost earnings and the information he had reviewed.  *Id*.  Indeed, Dr. Ireland made this concession right after explaining that he could not put a "specific dollar value" on seizures and early dementia allegedly suffered by Boerste.  *Id*.  That is far afield, of course, from his ability to opine on lost earnings.

Ironically, Boerste criticizes him on this basis as well, complaining that Dr. Ireland did not evaluate the neuropsychology expert that Gibson relied on.  But Dr. Ireland lacks expertise in neuropathology.  So why would either party or the Court want him to opine on such matters?  That earnings loss may have multiple causes does not necessarily undermine Dr. Ireland's conclusion about Boerste's current earnings relative to others with similar demographic characteristics.  Such testimony would help a lay juror evaluate Gibson's conclusions and assess Boerste's requested

losses.  The Court agrees with Judge Lindsay's sound recommendation and denies Boerste's motion to exclude Dr. Ireland.

## CONCLUSION

The Court overrules Boerste's objections (DN 248) and adopts the report and recommendations (DN 246) granting in part and denying in part the motion to exclude Drago (DN 178), granting the motion to exclude Dr. Smock (DN 180), denying several motions to exclude (DN 179, 181, 182, 183, 184), and granting a motion to file a surreply (DN 229) and to file a response out of time (DN 231).

Benjamin Beaton, District Judge

United States District Court

November 22, 2021